### In the District Court of the United States
### For the District of South Carolina
#### BEAUFORT DIVISION

| | |
|---|---|
| Otis Faust, #305759, ) | Civil Action No. 9:07-0058-RBH-GCK |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Warden Taylor, Director Ozmint, ) | |
| Associate Warden Burton, Major Felder, ) | |
| Lieutenant McNeil, and ) | |
| IGC Mary Montouth, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION



The Plaintiff, Otis Faust ("Plaintiff" or "Faust"), is a state prisoner who is incarcerated in the South Carolina Department of Correction's Ridgeland Correctional Institution ("RCI"). He has filed this action against the above-named defendants, Warden Taylor ("Warden Taylor"), Director Ozmint ("Director Ozmint"), Associate Warden Burton ("AW Burton"), Major Felder ("Major Felder"), Lieutenant McNeil ("Lt. McNeil"), and Internal Grievance Coordinator ("IGC") Mary Montouth ("IGC Montouth"),[1] seeking relief pursuant to Title 42, United States Code Section 1983[2] for alleged violations of his constitutional rights which occurred during his incarceration at RCI.

---

[1] Plaintiff's Amended Complaint added IGC Montouth as a defendant. [19]

[2] 42 U.S.C. §1983 provides, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. A motion for summary judgment has been filed by Warden Taylor, Director Ozmint, AW Burton, Major Felder, Lt. McNeil, and IGC Montouth (collectively, the "Defendants"). [57] As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).



*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128

(10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990). Such is the case with the present complaint.

### III. PROCEDURAL HISTORY

The Plaintiff filed his Complaint on December 29, 2006 alleging violations of the Eighth Amendment.[3] [1] An answer was filed on behalf of the defendants Taylor, Ozmint, Burton, Felder and McNeil. [9] Thereafter, Plaintiff filed a motion to amend/correct his Complaint [19] which was granted by the undersigned. [26] On June 25, 2007, Plaintiff filed his Amended Complaint, which added IGC Montouth as a defendant and alleged, in pertinent part that the Defendants had violated Plaintiff's rights under the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments. [30] The Defendants timely filed an answer to the Amended Complaint, alleging various affirmative defenses, including Plaintiff's failure to state a claim, Eleventh Amendment Immunity, qualified immunity, respondeat superior, Plaintiff's failure to exhaust administrative remedies, filing a frivolous suit, and failure to state a basis for punitive damages. [46]

On November 13, 2007, the Defendants filed a Motion for Summary Judgment, a supporting Memorandum, an amended Memorandum, and affidavits in support of their Motion.

---

[3] Should a limitations issue arise in this action, Plaintiff will have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his complaint. *See* this court's Order [7] filed on July 23, 2007.

[57; 61; 63] By order of this Court filed November 14, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. [59] On December 12, 2007, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment, followed by an amended response. [68; 72] At this time, the Defendants' motion for summary judgment [57] is ripe for review before the undersigned.

## IV. SUMMARY JUDGMENT STANDARD

The motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.



Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the

movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.



### V. DISCUSSION

#### A. Plaintiff's Complaint and Amended Complaint

The Defendants, in their motion for summary judgment, have addressed the allegations contained in the Complaint as well as in the Amended Complaint. However, the undersigned will not consider the allegations contained in the initial Complaint. "As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v.*

*City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citation and internal quotation marks omitted). Although the undersigned will not consider the allegations of the original complaint, the Court may, and will, consider certain exhibits attached to the original complaint that are "integral to and explicitly relied on in the [amended] complaint," and whose authenticity is not challenged, *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999), such as the SCDC Grievance form attached to the Complaint in which Plaintiff grieved some of the issues set forth in the Amended Complaint. The consideration of the Grievance Form is consistent with the above-stated principle regarding the superceding effect of an amended pleading. The exhibits are not superceded if the amended complaint effectively integrates them. Moreover, the Court's "consideration of exhibits that were attached to the original complaint, omitted from the amended complaint, but still referred to, integral to, and relied upon in the amended complaint, furthers the policy of '[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), cited in *Jeffrey M. Brown Associates, Inc. v. Rockville Center Inc.*, 7 Fed.Appx. 197, 202-03 (4th Cir. 2001) (*per curiam*).



Plaintiff alleges in his verified Amended Complaint[4] [30] that on December 3, 2005, he "mistakenly" broke the food service flap on Special Management Unit ("SMU") Cell 113, where he and his cellmate, Jermaine Grier ("Grier") were housed.[5] Sgt. Lewis noticed the broken food

---

[4] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[5] As the Defendants note, the facts set forth in the Complaint differ greatly from those set forth in the Amended Complaint. In apparent explanation, the Plaintiff states in the Amended Complaint that he "was ignorant of the true facts as correctly stated below". ([30] at 1) He proceeds to repeat the text of the original Complaint, but states that the allegations contained in the Complaint "was incorrect, and should be stated as below". Then, on pages 5-11, he

service flap and asked about it; Plaintiff admitted he had accidentally broken it while he "was beating on the food service flap window with [a] deodorant bottle and toothbrush while rapping". Sgt. Lewis took pictures of the broken food service flap. ([30] at 5) Lt. Bishop witnessed that the window was broken, and in response to Lt. Bishop's questions, Plaintiff admitted he had "mistakenly" broke the window while he was rapping. Lt Bishop returned to the control booth, where Sgt. Lewis wrote an incident report and issued Plaintiff a disciplinary ticket. ([30] at 5-6)

Plaintiff stated that on December 4, 2005, Grier intentionally "busted out" the back window of Cell 113, causing Plaintiff and Grief to be exposed to inclement weather. Sgt. Lewis noticed the broken cell window during her security check at about 7:30 p.m. on December 4, 2005, and Plaintiff alleges that Grier "confessed to busting the cell's back window because he was stressing." ([30] at 6) Plaintiff states that Sgt. Lewis followed the same procedure as she had the previous day with the food service flap window. (*Id.*) Plaintiff alleges that on that same day, he and Grier repeatedly asked Sgt. Lewis for a mop, broom, and dust pan to sweep up the water and glass, and they also repeatedly asked Sgt. Lewis for additional clothing and bedding because of the cold weather and rain, or to be moved immediately. Plaintiff states that "[a]ll of our requests was [sic] sadistically precluded." ([30] at 6)



The next morning (December 5, 2005), Lt. McNeil "coerced" Plaintiff and Grier to go outside to the recreation field, and wilfully left them on the Rec Field in the rain and cold for well over an hour for no apparent reason. Afterwards, Lt. McNeil placed Plaintiff and Grier together in the SMU holding cell. ([30] at 7) Plaintiff contends that from December 4, 2005 through January 13, 2006, he asked for, but was denied the following: (1) a change of clothing; (2) shoes; (3) additional clothing and bedding; (4) a transfer to a more adequate cell; (5) cleaning

---

alleges, in part, in the Amended Complaint that he mistakenly broke the food service flap and that his cell-mate Grief, intentionally broke out the back window in the cell. [30]

supplies; (6) the opportunity to "speak with a senior official in a senior position, who ministerial duty would of remedy a investigation or precluded the act." ([30] at 8)

On January 3, 2006, Plaintiff was forcefully removed from Cell 113 and placed in the SMU holding cell for two hours before being transferred to SMU Cell 125, in which the back window had been removed. Plaintiff repeatedly asked the reason that the back window was missing and was told that the window had been taken out of Cell 125 to replace the window in Cell 113. Plaintiff alleges that Lt. Pinkney (who is not a named Defendant) knowingly assigned him to a cell without a back window, and without adequate cleaning supplied, additional clothing or bedding, or sufficient heating. ([30] at 8)

Plaintiff alleges that several days after he had been assigned to Cell 125, Director Ozmint came in to SMU with Warden Taylor, AW Burton, Major Felder and Lt. McNeil. Director Ozmint stopped in front of Plaintiff's cell and asked if he had broken out the back window in Cell 113. Plaintiff stated that he had mistakenly broken the food service flap window in Cell 113, but he had not broken out the back window in Cell 113. ([30] at 8) Plaintiff alleges that Director Ozmint told him that if broke out another window, he would make him spend his whole time on lock-up without a back window. Then, Director Ozmint turned toward Warden Taylor, AW Burton, Major Felder, and Lt. McNeil and stated that they should make sure Plaintiff stayed in Cell 125, without a window. ([30] at 9) Plaintiff alleges that Director Ozmint "who is the respondeat superior" authorized Warden Taylor, who authorized AW Burton, who authorized Major Felder, who in turn authorized Lt. McNeil and other state actors acting under color of state law to deprive him of all of his property, which included legal materials, religious materials, personal hygiene supplies, clothing, shoes, adequate bedding, recreation, and sufficient food and drink. Plaintiff alleges that Lt. McNeil authorized him to be served Nutriloaf for 72 hours and arbitrarily had him placed in the restraint chair for a period of more than four hours. ([30] at 9)



Page 8 of 13

Plaintiff contends that from December 4, 2005 until January 13, 2006, he was barefoot in his cell, exposed to extreme weather, without any personal property, and had to sleep on a concrete slab or the concrete floor. He alleges that the water in his cell was turned off which prevented him from flushing the toilet or showering; the water in the toilet was briefly turned on every three or four days. ([30] at 10) Plaintiff alleges that all of the named Defendants knew or should have known of the allegations set forth in the Complaint because he submitted a Step 1 Grievance form on December 8, 2005 to IGC Montouth, who intentionally denied it by not processing it. ([30] at 9) He alleged that he submitted a Step 1 Grievance to her again on January 6, 2006 but it again was intentionally not processed. ([30] at 10) Plaintiff states he also submitted Requests to Staff to Warden Taylor, AW Burton, Major Felder, and Lt. McNeil but they intentionally were not answered.. ([30] at 9-10)

The above-described events have caused Plaintiff mental anguish in the form of nightmares and physical anguish such as headaches, back pains, and stiffness in his arms and legs. He states that the Defendants "were punitive and applied with deliberate indifference to inflict cruel and unusual punishment without due process of laws." ([30] at 10) He alleges that his rights under the First, Fourth, Fifth, Eighth, Ninth, and 14th Amendments have been infringed, and seeks monetary compensation due to permanent damages. ([30] at 10-11)

### B. Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a Section 1983 action concerning conditions of his confinement. 42 U.S.C. § 1997e(a). The revised PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove. *Anderson*, 407 F.3d at 681; *Jones v. Bock*, 127 S.Ct. 910, 921 (2007).

A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983. *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). Furthermore, under *Jones v. Bock*, while no unexhausted claim may be considered under the PLRA, a case should not be dismissed in its entirety because it contains unexhausted claims. *Jones*, 127 S.Ct. at 924-25. The Supreme Court has instructed that the unexhausted claims should be dismissed and the rest of the case proceed.

Plaintiff alleges that he submitted a Step 1 Grievance to IGC Montouth on December 8, 2005, but it was intentionally not processed. ([30] at 9) He alleges that he submitted a second Step 1 Grievance to her on January 6, 2006 but it, too, was intentionally not processed. ([30] at 10) According to the Defendants, Plaintiff filed Grievances on January 6, 2006, September 26, 2006 and September 29, 2006 (as mentioned above, the *Houston v. Lack* date of filing this action

is December 29, 2006). The January 6, 2006 grievance, attached to Plaintiff's Amended Complaint [30 at p. 3], stated as follows:

> On 12-5-05 I was told that I was being charge[d] with 820 Damage, Loss, Destruction or Defacing of property with a value. A week later I was found guilty of all charges, administrative at RCI had also taken my mattress from me on 12-3-05 and also all my property, legal, religion material as well, I'm still without my mattress and other property since 12-5-05, Administrative at RCI has violated the following policies procedures, OP 22, OP 22.12; OP 22.15, 8th Amendment and 14th Amendment right by refusing to return our property, legal, religious material, and mattress as well, also the window has been out of our cell since 12-4-05 administration refuse to replace the window in our cell, even when we had paid for the damage[d] windows and mattress. Administrative are forcing us to sit through the cold weather and rain, and also forcing us to sleep on a cement slab from 12-5-05 through 1-6-06, I'm still without my mattress and belongings[.]

The January 6, 2006 grievance was returned to Plaintiff as unprocessed because (1) Plaintiff failed to comply with the grievance procedure when he combined multiple allegations in one grievance; and (2) the incident concerning the window was not a grievable issue because, according to the Incident Report prepared immediately after the incident, Plaintiff admitted to breaking the window in the Cell.[6]

After the January 6, 2006 grievance was returned to Plaintiff as unprocessed because it contained multiple complaints, Plaintiff could have pursued the administrative grievance process by submitting grievances which separately addressed the issues set forth in the January 6, 2006 grievance. However, Plaintiff did not submit any grievances to address any of the issues set forth in the January 6, 2006 grievance. Therefore he did not pursue, and exhaust, the prison grievance procedure. Therefore, Plaintiff failed to exhaust his administrative remedies, and it is recommended that summary judgment be granted to the Defendants for this reason.

---

[6] Affidavit of Disciplinary Hearing Officer Shirley Singleton, paragraph 2.

## RECOMMENDATION

Based upon the foregoing, it is recommended that the Defendants' motion for summary judgment **[57] should be granted.**

George C. Kosko
United States Magistrate Judge

May 9, 2008
Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So
### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).