IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Otis Faust, #305759, | ) |
| | ) |
| Plaintiff, | ) C/A No. 0:07-0058-RBH-PJG |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Warden Taylor; Director | ) |
| Ozmint; Associate Warden | ) |
| Burton; Major Felder; | ) |
| Lieutenant McNeil; | ) |
| IGC Mary Montouth; | ) |
| | ) |
| Defendants. | ) |

This civil rights matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendants' motion for summary judgment. (Docket Entry 123.) The plaintiff, Otis Faust ("Faust"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 claiming that the defendants violated his constitutional rights. Specifically, Faust alleges that during his incarceration at Ridgeland Correctional Institution ("RCI") the defendants violated his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights.

**PROCEDURAL HISTORY**

The defendants have moved for summary judgment. (Docket Entry 123.) By order of this court filed October 20, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Faust was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately. (Docket Entry 126.) Faust filed a response in opposition to the defendants' motion for summary judgment on October 27, 2008 (Docket Entry 131) and an amended response on October 31, 2008 (Docket Entry 132). The motion is now before the court for a Report and Recommendation.

Page 1 of 9

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990).

## DISCUSSION

**A.     Background**

Faust alleges in his verified Amended Complaint[1] that on December 3, 2005, he "mistakenly" broke the food service flap on Special Management Unit ("SMU") Cell 113, where he was housed with his cellmate, Jermaine Grier ("Grier"). (See Am. Compl., Docket Entry 30.) When Sgt. Lewis became aware of the broken food service flap and asked Faust about it, Faust admitted he had "mistakenly" broken it while "beating on the food service flap window with [a] deodorant bottle and toothbrush while rapping." (Id. at 9.) The incident was properly documented and reported and Faust was issued a disciplinary ticket. (Id. at 9-10.)

The following day, Faust alleges that his cellmate, Grier, "intentionally busted out [the] SMU Cell #113 back window" causing Faust and Grier to be exposed to inclement weather. (Id. at 10.) Sgt. Lewis noticed the broken cell window during her security check at about 7:30 p.m., and Faust alleges that Grier confessed to breaking the back window. Sgt. Lewis again documented and reported the incident in the same manner as the day before. Faust alleges that on that same day, he and Grier repeatedly asked Sgt. Lewis for a mop, broom, and dust pan to remove the water and glass, and they also repeatedly asked Sgt. Lewis for additional clothing and bedding because of the cold weather and rain, or to be moved immediately. (Id.) Faust states that "[a]ll of our requests was [sic] sadistically precluded." (Id.) The following day, Faust contends that he and Grier were coerced by Lt. McNeil onto the recreational field and left outside for over an hour in the cold and rain. (Id. at 11.)

---

[1] On June 23, 2007, the court granted Faust's motion to amend his complaint. Thereafter, on June 25, 2007, Faust filed his Amended Complaint.

Additionally, Faust contends that from December 4, 2005 through January 13, 2006, he made repeated requests for and was denied: (1) a change of clothing; (2) shoes; (3) additional clothing and bedding; (4) a transfer to a more adequate cell; (5) cleaning supplies; and (6) the opportunity to "speak with a senior official in a senior position, who ministerial duty would of remedy a investigation or precluded the act." (Id. at 12.) During this time, Faust alleges that he was barefoot in his cell, exposed to extreme weather, and without any personal property. He further alleges that he had to sleep on a concrete slab or the concrete floor. He asserts that the water in his cell was turned off, which prevented him from flushing the toilet or showering, and that the water in the toilet was briefly turned on every three or four days. (Id. at 14.)

On January 3, 2006, Faust was removed from Cell 113 and transferred to SMU Cell 125, in which the back window had been removed. When he asked why the back window was missing, Faust was told that the window had been taken out of SMU Cell 125 to replace the window in Cell 113. Faust alleges that Lt. Pinkney (who is not a named Defendant) knowingly assigned him to a cell without a back window, adequate cleaning supplies, additional clothing or bedding, or sufficient heating. (Id. at 12.)

Faust alleges that several days after he had been assigned to SMU Cell 125, Director Ozmint came to SMU with Warden Taylor, AW Burton, Major Felder, and Lt. McNeil. Faust contends that Director Ozmint incorrectly believed that Faust had broken the back window to SMU Cell 125 and threatened him with lock-up if he broke another window. Director Ozmint then allegedly authorized Warden Taylor, who authorized AW Burton, who authorized Major Felder, who then authorized Lt. McNeil and other state actors acting under color of state law, to deprive him of all of his property, including legal materials, religious materials, personal hygiene supplies, clothing, shoes, adequate bedding, recreation, and sufficient food and drink. (Id. at 13.) Faust alleges that Lt. McNeil directed

that Faust be served Nutriloaf (or "Nutra Loaf") for 72 hours and arbitrarily had him placed in the "restraint chair" for a period of more than four hours. (Id.)

Faust states that he made repeated attempts to submit "Step 1 Grievance" forms, but that they were intentionally not processed. (Id. at 13-14.) Faust claims that he also submitted "Requests to Staff" to Warden Taylor, AW Burton, Major Felder, and Lt. McNeil that were also intentionally not answered. (Id.)

Faust alleges that the above-described events have caused him to suffer mentally and physically. He alleges that his rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution have been violated and seeks monetary compensation due to "permanent damages." (Id. at 14-15.)

**B.     Exhaustion**

The defendants contend that this matter should be dismissed because Faust has not exhausted his administrative remedies, as required by the Prison Litigation Reform Act, specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

The defendants have the burden of establishing that Faust failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). In support of their motion, the defendants have submitted the affidavit of Disciplinary Hearing Officer Shirley Singleton ("Singleton"), (Docket Entry 123-10), and the affidavit of Grievance Coordinator Mary Montouth ("Montouth"), (Docket Entry 123-9). Singleton avers that she was the hearing officer for each of the major disciplinary hearings that took place from November of 2005 through January of 2006 pertaining to Faust's disciplinary offenses related to the destruction of property. (See Singleton Aff., Docket Entry 123-10.) At the conclusion of each hearing, Singleton rendered a decision, which was appealable by Faust within a fifteen-day period in accordance with Inmate Grievance Policy GA-01.12 ("Grievance Policy"). (Id. at 3.) Mary Montouth, a Grievance Coordinator at Ridgeland Correctional Institution, avers that the Grievance Policy is provided to each inmate. (Montouth Aff., Docket Entry 123-9 at 1.) According to Montouth, when an inmate submits a grievance that is deemed insufficient, the inmate is advised of the deficiency. The unprocessed, deficient grievance is returned to the inmate and the inmate is responsible for correcting the deficiency and re-submitting it. (Id.) Montouth further states that Faust's January 6, 2006 grievance, which addressed the events and allegations raised in the Amended Complaint, was returned unprocessed to Faust because it was deficient. Specifically, Faust's January 6, 2006 grievance combined multiple allegations on one form, which Montouth and Singleton both attest is a violation of the Grievance Policy requirement that each grievance be set forth in a separate Step 1 Grievance Form. (Montouth Aff., Docket Entry 123-9 at 2, 4; Singleton Aff., Docket Entry 123-10 at 3.)

In response, Faust contends that he submitted multiple Step 1 Grievance Forms on December 10, 2005, January 6, 2006, September 26, 2006, November 27, 2006, and March 19, 2007. Faust contends that he received no response to his December 10 grievance; that his January 6 grievance

was returned unprocessed because it contained multiple allegations; and that his September 26, November 27, and March 19 grievances were returned unprocessed because Faust had exceeded the time frame to file a grievance on those issues. With regard to his January 6 grievance, Faust further alleges that the Grievance Policy does not specifically state that a grievance may not contain multiple allegations. Moreover, Faust alleges that the defendants have violated various sections of the Grievance Policy.

The only evidence of record shows that Faust has not fully and properly exhausted his administrative remedies regarding any of the claims in this matter. Not only must Faust use all the steps that are available to him to exhaust his administrative remedies, but he also must do them properly. See Woodford, 548 U.S. at 81. Faust has not properly exhausted all the steps available to him at RCI.[2] (See Montouth Aff., Docket Entry 123-9; Singleton Aff., Docket Entry 123-10); Jones, 549 U.S. at 217-18 (stating that the exhaustion requirement is "not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy") (citing Woodford, 548 U.S. at 93-95). Although Faust contends he has filed numerous grievances, the only evidence of record shows that he did not follow through with those grievances and avail himself of the administrative remedies offered by the Department of Corrections. Therefore, the court recommends that this matter be dismissed based on Faust's failure to exhaust his administrative remedies.

**RECOMMENDATION**

Accordingly, the court recommends that the defendants' motion for summary judgment (Docket Entry 123) be granted and Faust's claims be dismissed. In light of the court's

---

[2] Notably, after Faust's January 6 grievance was returned to him unprocessed because it contained multiple allegations, Faust did not attempt to re-submit either a corrected or new grievance with any of those claims for over eight months.

recommendation to grant the defendants' motion for summary judgment based on Faust's failure to exhaust his administrative remedies, the court further recommends that Faust's motion for disclosure (Docket Entry 147) and Faust's motion to compel (Docket Entry 150) be terminated as moot.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 19, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).